UNITED STANFORD EMPLOYEES, LOCAL 680, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–4038.

United States Court of Appeals, Ninth Circuit.

April 26, 1979.

James H. Wolpman (argued), Palo Alto, Cal., for petitioner.

Elliott Moore, Paul J. Spielberg (argued), N.L.R.B., Washington, D. C., for respondent.

Before CHOY and KENNEDY, Circuit Judges, and SCHNACKE, District Judge.*

SCHNACKE, District Judge:

United Stanford Employees, Local 680, Service Employees International Union, AFL–CIO (hereinafter, "Union"), has petitioned this Court for review of the decision of the National Labor Relations Board (hereinafter, "NLRB") that is reported at 232 NLRB No. 49. The NLRB has cross-applied for enforcement of the order accompanying that decision.

## I. Facts and Procedural Background

The union-security clause of the 1974–76 collective-bargaining agreement between the Union and Leland Stanford Junior University (hereinafter, "Stanford") basically required that bargaining-unit members, "as a condition of employment", be full-fledged Union members, rather than non-members of the Union who merely paid dues to the Union. A full-fledged Union member, in contrast to other persons, would be subject to Union-imposed disciplinary measures enforceable in state courts [*NLRB v. Hershey Foods Corp.*, 513 F.2d 1083, 1085 (9th Cir. 1975)].

A letter from the Union was distributed to new bargaining-unit members, which letter informed them that they "are required to join [the Union] on or before the end of [their] trial period", which joining would involve, *inter alia*, filling out a membership application card. The letter did not say what would happen to one who did not join. On other occasions, the Union told new employees that membership also involved taking an oath.

There developed a dispute between the Union and Stanford as to whether one employed by Stanford before the agreement was signed but who did not enter the bargaining unit until after the agreement was signed would have to become a full-fledged Union member or would be allowed merely

* Honorable Robert H. Schnacke, United States District Court for the Northern District of California, sitting by designation.

to pay dues to the Union. In 1976, the Union filed suit in state court against three employees in this category, seeking, *inter alia*, specific performance of an alleged obligation to become full-fledged Union members.

Shortly before the expiration of the collective-bargaining agreement, two other employees submitted letters stating they were resigning from the Union. The Union's letters in response refused to accept these resignations. The refusals were on grounds that the collective-bargaining agreement required, "as a condition of employment", that the employees maintain their Union membership.

The NLRB found that the Union had violated 29 U.S.C. § 158(b)(1)(A) by: (a) notifying employees they were required to fill out the Union's membership application card and take the Union's oath of membership; (b) prosecuting the specific-performance aspect of the state-court lawsuit; and (c) refusing to accept the resignations. The NLRB's brief in this Court also contends that the Union was responsible for a letter from Stanford to new bargaining-unit members, which letter, in relevant part, is similar to the Union's letter to new bargaining-unit members. However, we do not consider Stanford's letter, since the Administrative Law Judge and the NLRB opinion largely affirming him do not rely on Stanford's letter as a basis for finding unfair labor practices by the Union.

II. *Analysis*

The Union concedes that a bargaining-unit member's lack of full-fledged Union membership is no basis for firing that person, as long as he pays appropriate dues and initiation fees to the Union [see 29 U.S.C. § 158(a)(3); *NLRB v. Hershey Foods Corp.,* supra at 1084–1087]. But the Union contends that the person still has an obligation under the collective-bargaining agreement to become a full-fledged Union member. Thus, argues the Union, its challenged conduct was merely a permissible effort to enforce—by means not threatening anyone with loss of employment—a contractual obligation.

■ Actually, pursuant to 29 U.S.C. § 157, employees have the right to refrain from joining a labor union, "except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in [29 U.S.C. § 158(a)(3)]." But such "membership" includes only the duty to pay dues and initiation fees [*NLRB v. Hershey Foods Corp., supra* at 1084–1087].

■ Yet, the Union's letters in question said there was a requirement that employees join, and maintain their membership in, the Union. It is undisputed that the letters meant "join" and "membership" in the sense of full-fledged membership, including filling out a membership application card and taking an oath of membership. Thus, the letters asserted the existence of a non-existent and non-permissible requirement. 29 U.S.C. § 158(b)(1)(A) makes it an unfair labor practice for the Union to restrain employees in the exercise of their 29 U.S.C. § 157 rights, which include the right not to join the Union. As the Union appears to concede, there is illegal restraint when a labor union insists that an employee do something the employee has a 29 U.S.C. § 157 right not to do [see *IUE–Local 601*, 180 NLRB 1062 (1970)].

The Union argues, though, that the union-security clause of the collective-bargaining agreement makes it clear, in Article I.D.1.d.(3), that one who is not a full-fledged Union member may not be discharged as long as he pays dues to the Union. However, the union-security clause as a whole is not entirely clear on the point. And the letters to the resigning employees raised the specter of their being fired for lack of full-fledged Union membership, but said nothing about mere dues payment being enough to avoid discharge. Indeed, the letters did not cite Article I.D.1.d.(3), though the letters did cite other parts of the union-security clause.

Furthermore, an implied threat need not necessarily relate to discharge. An employ-

ee receiving one or both Union letters reasonably could have feared that his not being a full-fledged Union member would lead to a Union lawsuit against him. In fact, the Union did sue three employees, and the specific-performance aspect of that lawsuit was intended to restrain employees' exercise of what was a 29 U.S.C. § 157 right not to become full-fledged Union members. Thus, that specific-performance aspect violated 29 U.S.C. § 158(b)(1)(A), even if the lawsuit was brought in good faith. A good-faith defense, even if it formerly would have applied to the specific-performance aspect of the Union's lawsuit, no longer prevents that part of the lawsuit from being an unfair labor practice [see *Television Wisconsin, Inc.*, 224 NLRB 722, 722n, 778–780 (1976)].

The specific-performance aspect of the lawsuit was voluntarily dismissed with prejudice. Thus, according to the Union, if this aspect of the lawsuit was re-filed, it would be subject to involuntary dismissal, on *res judicata* grounds, so that a second lawsuit would not result in anyone's being forced to become a full-fledged Union member. But the mere filing of a lawsuit can restrain the exercise of 29 U.S.C. § 157 rights. And the fact that a second lawsuit would be doomed by *res judicata* would not totally eliminate the possibility that a second lawsuit would be filed.

The Union contends that the NLRB itself recommended in 1958 [*Keystone Coat, Apron & Towel Supply Co.*, 121 NLRB 880] that union-security clauses of collective-bargaining agreements contain terminology requiring one to be a union "member" as "a condition of employment"—the kind of terminology found in the Union's letter to the resigning employees. Thus, says the Union, the unfair-labor-practices proceedings in the case at bar constitute impermissible entrapment and a threat to the legality of at least half the union-security clauses in the United States, including the union-security clause in the present Union-Stanford collective-bargaining agreement.

However, there is no indication that the NLRB has required the Union to alter lan-

guage in any collective-bargaining agreement. Furthermore, the Union does not suggest that, in a non-entrapment situation, the NLRB would be precluded from making findings that would result in the illegalization of existing union-security clauses. And the Union cites no authority that applies the concept of entrapment to a case which, like the case at bar, involves neither criminal penalties nor civil monetary relief.

Instead, the NLRB has issued an order requiring the Union: (a) to cease and desist from what the NLRB correctly found were unfair labor practices violating federal labor law; and (b) to perform certain clerical tasks related to the ceasing and desisting.

The NLRB's application for the enforcement of its order is granted.