MILK DRIVERS AND DAIRY EMPLOYEES UNION, TEAMSTERS LOCAL 302, Plaintiff-Appellant,

v.

Craig VEVODA, Kenneth Chamness and Mark Sottana, Defendants-Appellees.

No. 84–2282.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1985.

Decided Sept. 24, 1985.

Duane B. Beeson, Beeson, Tayer & Silbert, San Francisco, Cal., for plaintiff-appellant.

Henry E. Telfeian, Patrick W. Jordan, McLaughlin & Irvin, San Francisco, Cal., for defendants-appellees.

Before SCHROEDER, NELSON and REINHARDT, Circuit Judges.

SCHROEDER, Circuit Judge.

This is an action by a union to collect fines levied against three of its members who violated the union's bylaws by working behind a picket line during a strike. The district court had jurisdiction pursuant to section 301 of the National Labor Relations Act (NLRA), 29 U.S.C. § 185.

The district court granted summary judgment for the defendants. It held that although the defendants had joined the union and had accepted all the burdens and benefits of membership until the time that they crossed the picket lines, they were nevertheless not bound by the contractual provisions applicable to union members.

Defendants argued they had been fraudulently induced to join the union. They were told that, pursuant to a valid union security provision in the collective bargaining agreement, they had to become union members as a condition of employment, and they were not told that under recent case law, the membership requirements could be satisfied by merely paying dues. The district court concluded that they had not "knowingly or voluntarily" become members of the union. *Milk Drivers & Dairy Employees Union v. Vevoda*, 587 F.Supp. 483, 484 (N.D.Cal.1984). We reverse.

The facts are straightforward. The plaintiff, Local 302, is a labor organization which at all times relevant to this action was party to a collective bargaining agreement with Lucky Stores, Inc., covering the San Francisco Bay Area. The contract between the union and Lucky Stores contained a security clause which required employees of Lucky Stores to become union members within thirty days of commencing employment.[1] The union bylaws, applicable to each member of the union, provide that, in the event of a strike, the union may fine members who continue to work.[2]

Defendants Vevoda and Sottana became employees of Lucky Stores in 1976 and joined the union shortly thereafter. Defendant Chamness had joined the union in 1956, and transferred to the plaintiff Local in 1975 when he became an employee of Lucky Stores. According to the uncontroverted affidavits of defendants Vevoda and Sottana, a representative of the employer told each of them, soon after they were employed, that they had to go to the Teamsters Local "to fulfill certain contractual

1. The security clause reads:
Union Membership. Membership in the Local Union on or after the thirtieth day following the beginning of employment or the effective date of this Agreement, whichever is later, shall be a condition of employment. Upon written notice from the local Union of failure on the part of any individual to complete or maintain membership in the Local Union as above required or a failure to tender payment to the Local Union, the Employer shall, within seven (7) days of such notice, discharge said employee.

2. The applicable union bylaws reads:

In the event of any firm being struck or being declared unfair by the Union and a boycott is placed against such firm, any member of the Union failing to come out on strike when so requested by authorized officials of the Union shall be fined not less than One Hundred Dollars ($100.00) or expelled....
In addition, the Constitution of the International Brotherhood of Teamsters, which applies to all members of local affiliates, prohibits the "crossing [of] an authorized picket line established by the member's Local Union or any other subordinate body affiliated with the International Union."

obligations" as a condition of continued employment. The affidavits further state that when Vevoda and Sottana arrived at the Local, a receptionist told them to fill out certain forms which defendants believe included a "membership application" form, and to attend an orientation meeting. At the orientation meeting, an officer of Local 302 told them they were required to take a membership oath.

Defendant Chamness joined a different local in 1956 and later transferred to Local 302. This affidavit contains parallel statements regarding his experiences with his first employer and local. However, the record does not show that any representative or employee of Local 302 made any statements whatsoever to Chamness about union membership.

All three defendants stated that they had never been told by any union representative that they could retain employment by merely paying dues and other fees. Further, they have all stated that if they had known that they did not have to become full-fledged union members, they would not have become members of Local 302. However, none of the defendants has alleged that the union ever threatened to fire him if he did not become a full-fledged member.

In 1978, the union authorized a strike against Lucky Stores and advised all of its members to honor the picket lines. Some days after the strike began, these appellees crossed the picket lines in order to work. The union levied the fines at issue here, which were upheld through a course of internal union appeals. When the defendants refused to pay, the union filed this action. For purposes of this appeal, there is no dispute that the defendants had joined the Local and were regarded as members in good standing until the time the fines at issue were levied, that they at no time questioned the terms of their membership, and that they never sought to resign full-fledged membership.

Defendants contend that they are not contractually bound to membership in the Local. This defense is based on the construction of section 8(a)(3) and 8(b)(2) of the NLRA, 29 U.S.C. §§ 158(a)(3), (b)(2) by both the National Labor Relations Board (NLRB), and the courts reviewing NLRB decisions. Those provisions relate to labor agreements requiring union membership as a condition of employment. *See NLRB v. General Motors Corp.,* 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *United Stanford Employees, Local 680 v. NLRB,* 601 F.2d 980 (9th Cir.1979); *NLRB v. Hershey Foods Corp.,* 513 F.2d 1083 (9th Cir. 1975). Defendants place particular reliance upon our decision in *United Stanford Employees,* 601 F.2d at 982–83, holding that a union, under a security agreement similar to that here, cannot force a dues-paying member of the bargaining unit to become a full-fledged member of the union. They also rely upon *Hershey Foods Corp.,* 513 F.2d at 1085–87, where we held that unfair labor practices had been committed in connection with attempts to fire employees who offered to pay dues but refused to become full-fledged members of the union.

Consideration of the defense in this case requires the district court to evaluate a union's dealings with employees about union membership. This is conduct closely regulated by sections 7 and 8 of the NLRA. A defense requiring judicial scrutiny of such activity is normally considered to be outside the jurisdiction of the district courts in section 301 contract actions and within the exclusive jurisdiction of the NLRB in the context of unfair labor practice disputes. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Gardner v. Teamsters Union,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); *Beriault v. Local 40, Super Cargoes & Checkers of I.L. & W.U.,* 501 F.2d 258 (9th Cir.1974).

This doctrine, which is known as the doctrine of primary jurisdiction, recognizes the intent of Congress to have matters of national labor policy decided in the first instance by the NLRB. *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distributors,* 689 F.2d 1339, 1342 (9th Cir.1982). The Supreme Court has stated: "As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [NLRA]'...." *Kaiser Steel Corp. v.*

*Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982) (quoting *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d 775). Application of the doctrine of primary jurisdiction in this case would require reversal because the district court lacked jurisdiction to consider the defense proffered by the defendants.

The defendants argue, and the district court agreed, that this defense falls within the exception to the doctrine of primary jurisdiction recognized by the Supreme Court in *Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833. There, the Court acknowledged that conduct committed to the NLRB's jurisdiction pursuant to section 8 of the Act normally comes within the NLRB's exclusive jurisdiction. It held, however, that a court in a section 301 action could decide whether the particular clause in the contract which the plaintiff sought to enforce was invalid as violative of section 8(e) of the NLRA, 29 U.S.C. § 158(e) (the hot cargo clause). *Id.* at 83, 102 S.Ct. at 859, 70 L.Ed.2d 833. Defendants argue that *Mullins* created a broad exception for defenses in section 301 actions based upon conduct which arguably violates the NLRA.

We considered, and rejected, a similar argument in *Glaziers & Glassworkers Local Union No. 767,* 689 F.2d 1339. In *Glaziers* we held that the NLRB's primary jurisdiction over the maintenance of contractual relationships between employers and unions preempted the district court from adjudicating a defense of invalidity of a collective bargaining agreement. *Id.* at 1342–45. We distinguished *Mullins* because the dispute there involved the interpretation of a term of the collective bargaining agreement, and not a defense that the parties had never entered into a binding contract. *Id.* at 1343–44. In *Glaziers,* as here, the defense is not the illegality of any contractual provision, but an attempt to "avoid the entire agreement." *Id.* at 1343. As we stated in *Glaziers,* "[t]his is quite distinct from the situation in *Mullins,* where the Court held that the district court could properly interpret a provision of a contract to determine if it was void under section 8(e) of the NLRA." *Id.* at 1343–44.

Our decision in *Glaziers,* and the authorities on which it is based, requires a reversal of the district court's decision in this case.

Even if we were to agree with the defendants, however, that the subject of their fraud defense is a matter of particular local concern and is not preempted by the primary jurisdiction of the Board, *see Belknap, Inc. v. Hale,* 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983), we would have to reverse the district court. The record does not factually support the assertions, repeated throughout appellees' brief on appeal, that officials of Local 302 "lied" to the defendants or "actively misled" them into joining the union. Their affidavits recite that a receptionist handed Vevoda and Sottana membership forms and an officer administered the oath required for membership in the Local. No representative of the union ever told any of the defendants that they would be fired if they resigned from full-fledged union membership and merely paid dues. It does not appear that anyone, plaintiff or defendants, ever thought of such a possibility during the period in question. Undoubtedly the defendants were under the impression that they had to become union members, since the collective bargaining agreement so stated. But there is no suggestion that any union representatives had any knowledge of the gloss which the NLRB and the courts have superimposed upon the statutes authorizing such clauses. Indeed it would have been unreasonable to expect the union agents to have any such knowledge in this case. It was not until 1979, the year after the strike occurred (though several years before these defendants asserted their defense), that this circuit decided that a union could not require full-fledged union membership under union security agreements similar to that under which these defendants were working. *United Stanford Employees,* 601 F.2d 980.

Whether we are to apply principles of federal labor law or California fraud law, our result here would not differ.

The judgment of the district court is reversed and the matter remanded for further proceedings.