COMMUNICATION WORKERS OF AMERICA, LOCAL 5900 (formerly 5709), AFL–CIO, Plaintiff-Appellant,

v.

Larry E. BRIDGETT, et al., Defendants-Appellees.

No. 49A02–8702–CV–53.

Court of Appeals of Indiana, First District.

Aug. 26, 1987.

Fred O. Towe, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, for plaintiff-appellant.

Daniel F. Cummings, Cummings & Merriman, Indianapolis, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Communication Workers of America, Local 5900, AFL–CIO (Union) appeals a judgment which denied the Union's attempt to collect fines imposed against Larry E. Bridgett and forty-three (43) other employees of Indiana Bell (Employees). We affirm.

## FACTS

Between the 7th and 27th of August 1983, the Union conducted a strike against Indiana Bell Telephone Company as part of a nationwide telephone strike. The defendant Employees chose not to participate in the strike, crossed the picket line and continued to work and draw pay from Indiana Bell. In late August the Union filed charges against the Employees. The charges stated that the Employees were members of the union who by crossing the picket line, had violated Article XIX, section 1(c) and (e) of the Union's Constitution, which provides:

"Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts:

. . . . .

(c) Wilfully violating the constitution of the Union, Local Bylaws or Rules; ...

(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local; ..."

Record at 384 and Volume 4, Exhibit A. A hearing was held before a union trial panel after the employees were given notice. Several of the employees were tried in absentia and fined. The employees did not appeal the fine through the Union's internal appellate procedure.

In November of 1984, the Union filed forty-four (44) separate actions against the Employees in Marion County Small Claims Court. The cases were later removed and consolidated for trial in the Marion County Municipal Court. The Union sought to enforce the fines imposed against the Employees for the alleged violations of the Union Constitution. On July 8, 1986, a bench trial was held. The parties stipulated that the cases were consolidated for all purposes and that the evidence to be presented would be the same except for the amount of damages claimed against the individuals as fines. Record at 275. The Union presented evidence that the Employees were enrolled as members when they crossed the picket lines and worked during the strike. The Employees presented evidence that prior to the strike they resigned and were no longer card carrying members when they crossed the picket lines. Several employees testified that they resigned by tendering oral or written resignations. Others testified that when they attempted to obtain information on the proper resignation procedure they were told either that they could not resign or that the time period for resignation had passed. On October 17, 1986, the trial court entered judgment against the Union. The Union appeals this judgment.

## ISSUES

Although the Union presents three (3) issues for review, the following are dispositive of the appeal:

1. Whether the trial court had jurisdiction to determine the membership status and the resignation from membership defense raised by the Employees.

2. Whether the trial court's judgment in favor of the Employees is contrary to the evidence.[2]

## DISCUSSION AND DECISION

*Issue One*

The Union argues that the trial court was without jurisdiction to determine the membership status of the Employees. Specifically, the Union argues that the doctrine of primary jurisdiction places resolution of these issues within the exclusive jurisdiction of the National Labor Relations Board (NLRB). We reject the Union's argument. Acceptance of this argument would give the Union the power to fine non-union member employees and would prevent a

---

2. The Union also argues that the trial court improperly interpreted the collective bargaining agreement and improperly held that the Employees were third-party beneficiaries. However, the trial court entered a general judgment. Therefore, if it is supportable upon any ground it will be upheld. In the present case lack of membership supports the judgment. *Hendrick v. First National Bank and Trust Co.* (1985), Ind.App., 482 N.E.2d 1146, 1149; *Central Indiana Carpenters Welfare Fund v. Ellis* (1980), Ind.App., 412 N.E.2d 865, 869.

fair adjudication of the present controversy.

The doctrine of primary jurisdiction relied upon by the Union arises out of the United States Supreme Court's interpretation of the National Labor Relations Act (NLRA). *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. In *Garmon* the Supreme Court held that Congress intended that matters of national labor policy be decided in the first instance by the NLRB. To protect this intent the Supreme Court provided, that as a general rule, federal courts do not have jurisdiction over activity which is "arguably subject to § 7 or § 8 of the National Labor Relations Act." [3] *Garmon*, at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783.

■ The general rule of primary jurisdiction, however, has not been given a broad mechanical application to bar all suits or defenses that arise in labor relations cases from being decided by the courts. *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters* (1978), 436 U.S. 180, 188–89, 98 S.Ct. 1745, 1753, 56 L.Ed.2d 209, 220. The doctrine is limited to its primary justification which is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose." *Vaca v. Sipes* (1967), 386 U.S. 171, 180–81, 87 S.Ct. 903, 912, 17 L.Ed.2d 842, 852; *see also, Kaiser Steel Corp. v. Mullins* (1982), 455 U.S. 72, 83–84, 102 S.Ct. 851, 859–60, 70 L.Ed.2d 833, 843–44; *Sears, Roebuck and Co.*, 436 U.S. at 188–89, 98 S.Ct. at 1752–53, 56 L.Ed.2d at 219–20; *William E. Arnold Co. v. Carpenters District Council* (1974), 417 U.S. 12, 16, 94 S.Ct. 1069, 1072, 40 L.Ed.2d 620, 625. Therefore, unless the Congressional intent of keeping the area of labor relations uniform is placed in jeopardy, the doctrine is inapplicable.

■ The doctrine of primary jurisdiction does not apply to the present case. The issue which was raised by the Employees as a defense merely involves the contractual question of whether they were parties to the contract and members of the Union at the time of the strike. This issue is not one that involves an activity that is arguably protected by § 7 or prohibited by § 8 of the NLRA. The defense of non-membership and resignation was purely a contractual issue and merely a negative response to the Union's affirmative burden of establishing that the Employees were parties to the contract that the Union was trying to enforce. The doctrine of primary jurisdiction does not apply to preempt the court's jurisdiction to interpret and enforce contracts. *Kaiser Steel*, 455 U.S. at 83–84, 102 S.Ct. at 859–60, 70 L.Ed.2d at 843–44. The court interpreted the present contract to cover only members of the Union. The Constitution specifically provided that only "members" may be fined. If the Union failed to establish that the Employees were members of the Union during the days they worked behind picket lines, then the court could not enforce the fines the Union imposed under the Constitution. Thus, the trial court was required to determine the membership status of the Employees. The issue of membership status *vel non* is not covered by sections 7 or 8 of the NLRA, and accordingly, not preempted by the doctrine of primary jurisdiction. Therefore, the defense raised by the Employees was within the trial court's jurisdiction.

■ We also hold that the trial court had jurisdiction to hear the defense of membership and resignation even if the defense arguably involves an issue of unfair labor practice governed by sections 7 and 8 of the NLRA. When a labor dispute involves both a breach of contract and an unfair labor practice charge, the NLRB and the courts have concurrent jurisdiction to resolve the dispute. *Kaiser Steel*, at 83–84, 102 S.Ct. at 859–60, 70 L.Ed.2d at 843–44; *William E. Arnold Co.*, 417 U.S. at 16, 94 S.Ct. at 2072, 40 L.Ed.2d at 625; *Vaca*, 386 U.S. at 181–83, 87 S.Ct. at 912–13, 17 L.Ed.2d at 852–53; *Hotel Restaurant Employees and Bartenders Union, Local 703*

---

**3.** Sections 7 and 8 are located at 29 U.S.C. §§ 157, 158.

*v. Williams* (9th Cir.1985), 752 F.2d 1476, 1478; *Board of Trustees, Container Mechanics Welfare/Pension Fund v. Universal Enterprises, Inc.* (11th Cir.1985), 751 F.2d 1177, 1183; *Toyota Landscape Co., Inc. v. Building Material and Dump Truck Drivers Local 420* (9th Cir.1984), 726 F.2d 525, 527. This rule is especially applicable when the unfair labor practice charge is peripheral to the determination of the contract charge. *Kaiser Steel*, 455 U.S. at 83–84, 102 S.Ct. at 859–60, 70 L.Ed.2d at 843–44; *Sears, Roebuck and Co.*, 436 U.S. at 188–89, 98 S.Ct. at 1752–53, 56 L.Ed.2d at 219–20; *Vaca*, 386 U.S. at 179–81, 87 S.Ct. at 910–12, 17 L.Ed.2d at 852–53. The critical inquiry in applying the doctrine of primary jurisdiction is whether the controversy presented to the state court is identical with that which could be presented to the NLRB. *Belknap Inc. v. Hale* (1983), 463 U.S. 491, 510, 103 S.Ct. 3172, 3183, 77 L.Ed.2d 798, 814. Also, the rule in *Garmon* is relaxed "when the state court can ascertain the actual legal significance under federal labor law by reference to compelling precedent applied to essentially undisputed facts." *Garmon*, 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783. Thus, when the uniformity of federal labor law is not jeopardized, the courts may resolve a dispute even though it arguably is covered by sections 7 and 8 of the NLRA. *Sears, Roebuck and Co.*, 436 U.S. at 188–89, 98 S.Ct. at 1753, 56 L.Ed.2d at 220.

 Under federal labor law, the court must interpret the contract provision to determine if the provision violates the NLRA, before enforcing a fine under the contractual provision. *Kaiser Steel*, 455 U.S. at 83–84, 102 S.Ct. at 859–60, 70 L.Ed.2d at 843–44; *Scofield v. NLRB* (1969), 394 U.S. 423, 429, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385, 393. The courts cannot enforce a contract that violates the NLRA. *Scofield*, 395 U.S. at 429, 89 S.Ct. at 1158, 22 L.Ed.2d at 393. Furthermore, both federal labor law and the Union's constitutional provision limit and prohibit the imposition of fines against non-members. *Pattern Makers' League of North America, AFL–CIO v. NLRB* (1985), 473 U.S. 95, 105,

105 S.Ct. 3064, 3068, 87 L.Ed.2d 68, 73–74; *Booster Lodge No. 405, International Association of Machinists and Aerospace Workers v. NLRB* (1973), 412 U.S. 84, 88, 93 S.Ct. 1961, 1964, 36 L.Ed.2d 764, 767–68; *NLRB v. Granite State Joint Board, Textile Workers Union of America Local 1029* (1972), 409 U.S. 213, 215–18, 93 S.Ct. 385, 386–87, 34 L.Ed.2d 422, 425–26. Accordingly, if the Employees actually or constructively resigned from the Union, then the court could not enforce the Union's imposition of fines. *Pattern Makers*, 473 U.S. at 105, 105 S.Ct. at 3068, 87 L.Ed.2d at 73–74; *N.L.R.B. v. Oil, Chemical and Atomic Workers International Union Local 6-578* (8th Cir.1980), 619 F.2d 708, 712.

In the present case the trial court addressed the Employees' membership and resignation defense. Although this defense might arguably encompass an issue of unfair labor practice under sections 7 and 8 of the NLRA, the defense was peripheral to any concerns of the NLRB and federal labor law uniformity. The current defense only seeks a determination of membership *vel non*. Thus, the current suit is not identical to one that could be brought before the NLRB which would involve the more complex issue of whether the Union had committed an unfair labor practice. Furthermore, compelling precedent from the Supreme Court establishes that a Union cannot prevent resignation or impose fines on non-members. *Pattern Makers*, 473 U.S. at 105, 105 S.Ct. at 3068, 87 L.Ed.2d at 73–74; *Booster Lodge No. 405*, 412 U.S. at 88, 93 S.Ct. at 1964, 36 L.Ed.2d at 767–68; *Granite State Joint Board*, 409 U.S. at 215–18, 93 S.Ct. at 386–87, 34 L.Ed.2d at 425–26. Therefore, if the Employees were not members, the trial court properly refused to accept the Union's argument that the court was without jurisdiction to determine membership. The trial court could not enforce the fines against the non-members equitably or otherwise without digressing from ruling Supreme Court precedent. Furthermore, acceptance of the Union's argument that the trial court could not determine the defense of non-membership would result in

the Union's ability to use the courts inequitably and unjustly in imposing fines against non-members. This result would be intolerable. Therefore, since the defense only involved a peripheral issue of unfair labor practice, and since the controlling federal law clearly prohibits imposition of fines on non-members, we hold that the trial court properly addressed the Employees' defense of non-membership and resignation.

The Union argues that the trial court's determination of the defense contravenes federal precedent, and relies on *Milk Drivers and Dairy Employees Union v. Vevoda* (9th Cir.1985), 772 F.2d 530. In *Vevoda* the union sued members to collect fines imposed under the union's constitution for working behind picket lines during a strike. *Vevoda*, at 531. The members did not challenge their membership, but argued that the constitutional contract was invalid because they had been fraudulently induced to join the union. *Id.* The members allegedly were told that they had to become members as a condition of employment and were not told that the requirements could be met by merely paying dues without becoming members. *Id.* The district court addressed and resolved this defense in favor of the members. *Id.*

The Ninth Circuit Court of Appeals held that the district court improperly decided this defense because the court was without jurisdiction. *Id.* at 532. The court stated that this defense involved an issue of conduct that was closely regulated by sections 7 and 8 of the NLRA. *Id.* Furthermore the court determined that the defense did not fall within the exception to the doctrine of primary jurisdiction which allows interpretation of a contract provision by the court to determine whether there is a violation of the NLRA. *Id.* at 533. Finally, the court said that even if the district court had jurisdiction, the defense of fraud would fail as no misrepresentation was made by union officials with regard to membership requirements. *Id.* Thus, the court reversed the decision. *Id.*

The Union's reliance on *Vevoda* is misplaced. The issues and facts in the *Vevoda* case and the present case differ in several important respects. First, in *Vevoda*, the court stated,

"For purposes of this appeal, there is no dispute that the defendants had joined the local and were regarded as members in good standing until the time the fines at issue were levied, that they at no time questioned the terms of their membership, and that they never sought to resign fullfledged membership."

*Id.* at 532. In the present case, unlike *Vevoda*, the crux of the Employees' defense is that they were not members and had resigned prior to the strike. The issue of their membership was in question prior to the imposition of the fines. Furthermore, all believed that they were not card carrying members when they crossed the picket lines.

The defense in the present case also differs from the defense in *Vevoda*. In *Vevoda* the members argued that they were fraudulently induced to join the union. *Id.* at 531. The court determined, however, that no misrepresentations were made. *Id.* at 533. In the present case, the members alleged and have shown that they resigned or were misled from resigning. Furthermore, the Employees in the present case are not attempting to void an agreement, but are merely arguing that the Union failed to establish that they were members. Such a defense is merely the converse to the Union's burden of proof on membership which must be met before fines can be imposed. Thus, the rationale of *Vevoda* does not apply to the present case; the doctrine of primary jurisdiction does not preempt the trial court's jurisdiction; and the trial court properly addressed the Employees' defense.

*Issue Two*

▮ The Union next argues that even if the trial court had jurisdiction to hear the defense there was insufficient evidence to support the judgment. When reviewing for insufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses and will view only that evidence which supports the judgment. *Abels v. Monroe County Edu-*

*cational Ass'n* (1986), Ind.App., 489 N.E.2d 533, 540, *cert. denied* (1987), —— U.S. ——, 107 S.Ct. 1347, 94 L.Ed.2d 518; *Glasgo v. Glasgo* (1980), Ind.App., 410 N.E.2d 1325, 1331; *Central Indiana Carpenters Welfare Fund v. Ellis* (1980), Ind.App., 412 N.E.2d 865, 868. In addition, we will uphold the trial court's decision if it is supported by substantial evidence of probative value. *Abels;* at 540; *Ellis*, at 868.

In the present case the trial court held that the Union failed to carry the burden of proving and establishing membership on the date of the strike. Generally, "the burden of proof rests upon the party who, as determined by the pleadings asserts the affirmative of an issue and it remains there until the action is concluded." *Lodge 743, International Ass'n of Machinists v. United Aircraft Corp.* (D.C.Conn.1969), 299 F.Supp. 877, 890 *affirmed in part and reversed and remanded on other grounds* in 534 F.2d 422. Thus, the Union initially had the burden of proving membership and could establish a prima facie case by showing that the Employees joined the Union. Once the union established this, the Employees came forth with evidence to establish the defense of resignation.

■ Generally, the procedure for resignation from the Union is governed by the contract. In the present case no provision existed in the Union's Constitution with regard to resignation. However, the evidence established that resignation could be effectuated by an oral or written statement to a Union official that indicates that the member resigns. Record at 305. The Employees testified in the present case that they either orally resigned by talking with a Union official or sent a written statement of resignation to the Union. Record at 342, 460, 466, 474, 485. Other employees testified that they attempted to resign, but when they asked union officials how to resign they were misled as to the proper procedure and ability to resign. Under general principles of equity and contract law,

"where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage."

*Amalgamated Clothing and Textile Workers Union, AFL–CIO v. Ratner Corp.* (9th Cir.1979), 602 F.2d 1363, 1370, quoting, *Union Mutual Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall) 222, 233, 20 L.Ed. 617 (1872); *see generally* 13 Williston on Contracts § 1536 (3d ed. 1970); 12 I.L.E. Estoppel § 41 (1959); and, *Kokomo Veterans Inc., V.F.W. v. Schick* (1982), Ind.App., 439 N.E.2d 639, 644. This evidence established resignation, rebutted the Union's evidence of membership, and was sufficient to support the trial court's conclusion that the Employees were not members. Therefore, the trial court properly refused to enforce the fines imposed by the Union.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.