Accordingly, the summary judgment under review is affirmed.

LOCAL 827, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, PLAINTIFF–RESPONDENT, v. EDNA TRAD, JOHN T. DIXON AND MARJORIE E. SIMMS, DEFENDANTS– APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 4, 1988—Decided March 11, 1988.

Before Judges J.H. COLEMAN, HAVEY and STERN.

*Rossie D. Alston, Jr., pro hac vice,* argued the cause for appellants (*Steven J. Abelson,* attorney).

*Paul M. Levinson* argued the cause for respondent (*Laurence A. Hecker,* attorney).

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiff Local 827 of the International Brotherhood of Electrical Workers (the Union) filed complaints against defendants Edna S. Trad, John T. Dixon, and Marjorie E. Simms, employees of New Jersey Bell Telephone Company (Bell), seeking to enforce disciplinary fines it imposed on them for strike breaking. In their joint answer, filed after consolidation of the cases, defendants challenged the authority of the union to fine them. They asserted that the Union "failed to advise [them] of their right to resign from Union membership," and in fact "affirmatively and constructively prevented [them] from resigning." In their joint counterclaim, defendants charged that plaintiff "ha[d] engaged in a continual and consistent pattern of harassment and intimidation against the defendants for the sole purpose of insuring strict obedience to its Union decisions."

After a two-day bench trial, the trial judge held that the court lacked "jurisdiction to consider the defense proffered by the defendants." However, the judge found that the court nevertheless had jurisdiction to enforce the fines, and an order was entered to that effect.

On this appeal, defendants challenge the trial judge's conclusion that he did not have jurisdiction to consider the defense. We reverse.

## I

Local 827 represents Bell employees in their dealings with the company. The union operates as a modified, "closed shop," which means that Bell employees can become members of the union or can choose to be dues-paying non-members.

Defendants claim that at the time they were hired and thereafter they were told that union membership was a condition of employment with Bell. Ms. Trad testified that when she transferred from Southern Bell to New Jersey Bell, she was approached by a union representative, who asked her to sign a union card and who told her that she had to be a member of the union in order to work for the company. Ms. Simms related a similar story to the effect that she was told by the same union representative, "[i]f you want to work here, you sign the card." Mr. Dixon testified that he also was told by a different union representative that union membership "was a condition of employment." All three defendants testified that they would not have joined or would have resigned from the union if they knew they had the right to do so or to become dues-paying non-members.

In 1983, the union voted in favor of a strike against Bell.[1] The strike lasted from August 8, 1983 to August 26, 1983. By letter dated August 11, 1983, defendants were formally informed by the union delegate that the strike against the Bell System was "on," that it was their "obligation ... not [to] report to work," and that if they did work, "charges" would be brought against them pursuant to the union's constitution. At that point, defendants separately inquired as to the possibility of resigning from the union. They claim they were again told that union membership was a condition of their employment. Thereafter, they each decided to cross the picket line and work during the strike.

---

[1] The three defendants entered an appearance to vote against the strike.

Following the strike, in September of 1983, the union brought charges against defendants for violating union provisions against working during a strike. After the matter was tried by the union, each defendant was fined in the amount of 80% of their base salary earned during the strike, an amount estimated to be their take-home pay for that period. The union sought judicial enforcement of its decision after the defendants refused to pay the fines.

As noted above, following trial, the trial judge ruled that the court lacked "jurisdiction to consider the defense proffered by the defendants." Relying primarily on *Milk Drivers & Dairy Employees Union v. Vevoda,* 772 *F.*2d 530 (9th Cir.1985), *cert.* den. 475 *U.S.* 1036, 106 *S.Ct.* 1246, 89 *L.Ed.*2d 354 (1986), the judge stated:

This Court finds that the doctrine of primary jurisdiction which recognizes the intent of Congress to have matters of national labor policy decided in the first instance by the NLRB, applies here.

The judge, however, found that the court nevertheless maintained jurisdiction to enforce the fines. The judge ordered that execution of the judgment "be withheld for 30 days in order for the defendants to petition the National Labor Relations Board for relief." Plaintiff was permitted to execute on the judgment if the defendants did not file complaints with the NLRB within that period or if the complaints were dismissed.[2]

The defendants argue that unions can only discipline voluntary members, and that since their membership was never voluntary, they cannot be subjected to the fines imposed. They assert that their membership was involuntary because they were never advised that they could pay dues to the union without becoming members and without jeopardizing their employment, as permitted by federal law. *See, e.g., NLRB v.*

---

[2]The parties appear to agree that, even if the imposition of the fines itself constituted an unfair labor practice independent of the advice given concerning the obligation to join the union and the inability to resign, the time for filing a complaint with the National Labor Relations Board had run by the time the trial court rendered its opinion.

*General Motors Corp.*, 373 *U.S.* 734, 83 *S.Ct.* 1453, 10 *L.Ed.*2d 670 (1963); *United Stanford Employees, Local 680 v. NLRB*, 601 *F.*2d 980 (9th Cir.1979); *NLRB v. Hershey Foods Corp.*, 513 *F.*2d 1083, 1084–1087 (9th Cir.1975).

The union argues that state jurisdiction to hear the defense of involuntary membership is pre-empted by the jurisdiction of the NLRB. It also contends that no misrepresentations were made to the defendants. However, the judge made no fact-findings because of his decision on jurisdiction.

The union relies on *Milk Drivers & Dairy Employees Union v. Vevoda, supra.* As in this case, *Vevoda* was "an action by a union to collect fines levied against three of its members who violated the union's bylaws by working behind a picket line during a strike." 772 *F.*2d at 531. As in this case, in *Vevoda:*

> Defendants argued they had been fraudulently induced to join the union. They were told that, pursuant to a valid union security provision in the collective bargaining agreement, they had to become union members as a condition of employment, and they were not told that under recent case law, the membership requirements could be satisfied by merely paying dues. [772 *F.*2d at 531].

As in this case, in *Vevoda:*

> All three defendants stated that they had never been told by any union representative that they could retain employment by merely paying dues and other fees. Further, they have all stated that if they had known that they did not have to become full-fledged union members, they would not have become members of [the] Local. However, none of the defendants ... alleged that the union ever threatened to fire him if he did not become a full-fledged member. [*Id.* at 532].

In *Vevoda:*

> there [was] no dispute that the defendants had joined the Local and were regarded as members in good standing until the time the fines at issue were levied, that they at no time questioned the terms of their membership, and that they never sought to resign full-fledged membership. [*Id.*].

The Court of Appeals held that the District Court lacked jurisdiction to consider the defenses related to the union's fraudulent inducement of plaintiffs to join and remain in the union:

> Consideration of the defense in this case requires the district court to evaluate a union's dealings with employees about union membership. This is conduct closely regulated by sections 7 and 8 of the NLRA. A defense

requiring judicial scrutiny of such activity is normally considered to be outside the jurisdiction of the district courts in section 301 contract actions and within the exclusive jurisdiction of the NLRB in the context of unfair labor practice disputes. [citations omitted].

This doctrine, which is known as the doctrine of primary jurisdiction, recognizes the intent of Congress to have matters of national labor policy decided in the first instance by the NLRB. [citation omitted]. The Supreme Court has stated: 'As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [NLRA]'....' *Kaiser Steel Corp. v. Mullins*, 455 *U.S.* 72, 83, 102 *S.Ct.* 851, 859, 70 *L.Ed.*2d 833 (1982) (quoting [*San Diego Building Trades Council v. Garmon*, 359 *U.S.* 236, 79 *S.Ct.* 773, 3 *L.Ed.*2d 775 (1959) ] 359 *U.S.* at 245, 79 *S.Ct.* at 780, 3 *L.Ed.*2d 775). *Application of the doctrine of primary jurisdiction in this case would require reversal because the district court lacked jurisdiction to consider the defense proffered by the defendants.* [*Id.* at 532–533 (emphasis supplied) ].[3]

The court rejected the argument that the case fell within the exception to the pre-emption doctrine which permits a court to interpret terms in a collective bargaining agreement, because it characterized the defense raised as "not the illegality of any contractual provision, but an attempt to 'avoid the entire agreement.'" *Id.* at 533 (quoting *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distributors*, 689 *F.*2d 1339, 1343 (9th Cir.1982)). Finally, the court ruled that even if jurisdiction were not pre-empted, the defendants' assertions had no factual support in the record.

More recently, the Court of Appeals of Indiana took a more expansive view of jurisdiction. *See Communications Workers of America, Local 5900 v. Bridgett*, 512 *N.E.*2d 195 (Ind.Ct. App., 1st Dist.1987). In that case, the union again argued "that the trial court was without jurisdiction to determine the membership of the Employees. Specifically, the Union argue[d] that the doctrine of primary jurisdiction places resolution of these issues within the exclusive jurisdiction of the National Labor Relations Board (NLRB)." 512 *N.E.*2d at 197. The case concerned Indiana Bell Telephone employees who crossed the pick-

---

[3]Sections 7, 8 and 301 of the National Labor Relations Act are codified at 29 *U.S.C.* §§ 157, 158 and 185, respectively.

et lines during the same August 1983 strike as that involved in this appeal. There:

> The Union presented evidence that the Employees were enrolled as members when they crossed the picket lines and worked during the strike. The Employees [on the other hand] presented evidence that prior to the strike they resigned and were no longer card carrying members when they crossed the picket lines. Several employees testified that they resigned by tendering oral or written resignations. *Others testified that when they attempted to obtain information on the proper resignation procedure they were told either that they could not resign or that the time period for resignation had passed.* [*Id.* at 197 (emphasis supplied)].

The Court of Appeals concluded that the doctrine of primary jurisdiction did not preclude the state court from entertaining the defense:

> The doctrine of primary jurisdiction relied upon by the Union arises out of the United States Supreme Court's interpretation of the National Labor Relations Act (NLRA). *San Diego Building Trades Council v. Garmon* (1959), 359 *U.S.* 236, 79 *S.Ct.* 773, 3 *L.Ed.*2d 775. In *Garmon* the Supreme Court held that Congress intended that matters of national labor policy be decided in the first instance by the NLRB. To protect this intent the Supreme Court provided, that as a general rule, federal courts do not have jurisdiction over activity which is "arguably subject to § 7 or § 8 of the National Labor Relations Act." *Garmon*, at 245, 79 *S.Ct.* at 780, 3 *L.Ed.*2d at 783.
>
> The general rule of primary jurisdiction, however, has not been given a broad mechanical application to bar all suits or defenses that arise in labor relations cases from being decided by the courts. *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters* (1978), 436 *U.S.* 180, 188–89, 98 *S.Ct.* 1745, 1753, 56 *L.Ed.*2d 209, 220. The doctrine is limited to its primary justification which is the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose. *Vaca v. Sipes* (1967), 386 *U.S.* 171, 180–81, 87 *S.Ct.* 903, 912, 17 *L.Ed.*2d 842, 852; [citations omitted]. Therefore, unless the Congressional intent of keeping the area of labor relations uniform is placed in jeopardy, the doctrine is inapplicable. [512 *N.E.*2d at 198].

The court further concluded:

> The doctrine of primary jurisdiction does not apply to the present case. The issue which was raised by the Employees as a defense merely involves the contractual question of whether they were parties to the contract and members of the Union at the time of the strike. This issue is not one that involves an activity that is arguably protected by § 7 or prohibited by § 8 of the NLRA. The defense of non-membership and resignation was purely a contractual issue and merely a negative response to the Union's affirmative burden of establishing that the Employees were parties to the contract that the Union was trying

to enforce. The doctrine of primary jurisdiction does not apply to preempt the court's jurisdiction to interpret and enforce contracts. *Kaiser Steel*, 455 *U.S.* at 83–84, 102 *S.Ct.* at 859–60, 70 *L.Ed.*2d at 843–44. The court interpreted the present contract to cover only members of the Union. The Constitution specifically provided that only members may be fined. If the Union failed to establish that the Employees were members of the Union during the days they worked behind picket lines, then the court could not enforce the fines the Union imposed under the Constitution. Thus, the trial court was required to determine the membership status of the Employees. The issue of membership status *vel non* is not covered by sections 7 or 8 of the NLRA, and accordingly, not preempted by the doctrine of primary jurisdiction. Therefore, the defense raised by the Employees was within the trial court's jurisdiction. [*Id.* at 198].

Finally, the Court of Appeals also held:

... that the trial court had jurisdiction to hear the defense of membership and resignation even if the defense arguably involves an issue of unfair labor practice governed by sections 7 and 8 of the NLRA. When a labor dispute involves both a breach of contract and an unfair labor practice charge, the NLRB and the courts have concurrent jurisdiction to resolve the dispute. [citations omitted]. This rule is especially applicable when the unfair labor practice charge is peripheral to the determination of the contract charge. [citations omitted]. The critical inquiry in applying the doctrine of primary jurisdiction is whether the controversy presented to the state court is identical with that which could be presented to the NLRB. *Belknap Inc. v. Hale* (1983), 463 *U.S.* 491, 510, 103 *S.Ct.* 3172, 3183, 77 *L.Ed.*2d 798, 814. Also, the rule in *Garmon* is relaxed 'when the state court can ascertain the actual legal significance under federal labor law by reference to compelling precedent applied to essentially undisputed facts.' *Garmon*, 359 *U.S.* at 245, 79 *S.Ct.* at 780, 3 *L.Ed.*2d at 783. Thus, when the uniformity of federal labor law is not jeopardized, the courts may resolve a dispute even though it arguably is covered by sections 7 and 8 of the NLRA. *Sears, Roebuck and Co.*, 436 *U.S.* at 188–89, 98 *S.Ct.* at 1753, 56 *L.Ed.*2d at 220. [*Id.* at 198–199].

As established labor law precluded the imposition of fines by unions against non-members, the court ruled that "if the Employees actually or constructively resigned from the Union, then the court could not enforce the Union's imposition of fines." *Id.* at 199 (citations omitted). It also held that the state courts maintained jurisdiction to make this determination.

As noted above, in *Bridgett*, some employees "presented evidence that prior to the strike they resigned and were no longer card carrying members when they crossed the picket lines. Several employees testified that they resigned by tendering oral or written resignations." 512 *N.E.*2d at 197. On this

basis, the Indiana Court of Appeals distinguished *Vevoda* because of language in the Ninth Circuit opinion that:

> For purposes of this appeal, there is no dispute that the defendants had joined the Local and were regarded as members in good standing until the time the fines at issue were levied, that they at no time questioned the terms of their membership, and that they never sought to resign full-fledged membership. [772 *F.*2d at 532].

The distinction resulted because the crux of the defense in Indiana was that the employees "were not members and had resigned prior to the strike." 512 *N.E.*2d at 200. While the evidence in our case cannot be so interpreted, defendants testified that they would have resigned if they knew they could do so without losing their jobs. In fact, they assert that they did not do so only because of defendant's unfair labor practice in misrepresenting their obligation to remain union members. Thus, in this respect, this case may involve constructive resignation as in *Bridgett* because "the members alleged and have shown that they resigned *or were misled from resigning*." 512 *N.E.*2d at 200 (emphasis supplied). However, we do not decide this case on the basis of a distinction between employees who resigned and those who did not. In *Bridgett,* in addition to the employees who resigned, "[o]thers testified that when they attempted to obtain information on the proper resignation procedure they were told either that they could not resign or that the time period for resignation had passed." 512 *N.E.*2d at 197. Even those who remained members because of advice that they could not resign were permitted to assert their defense of an unfair labor practice based on that advice. The defendants in this case were treated similarly to those employees by the union and should be treated similarly to them by the courts. In fact, defendants in this case assert the very defense which gave rise to a finding of "constructive resignation" in *Bridgett.* As in *Bridgett:*

> The defense in the present case ... differs from the defense in *Vevoda.* In *Vevoda* the members argued that they were fraudulently induced to join the union. *Id.* at 531. The court determined, however, that no misrepresentations were made. *Id.* at 533. *In the present case, the members alleged and have shown that they* resigned or *were misled from resigning.* Furthermore, the

Employees in the present case are not attempting to void an agreement, but are merely arguing that the Union failed to establish that they were members. Such a defense is merely the converse to the Union's burden of proof on membership which must be met before fines can be imposed. Thus, the rationale of *Vevoda* does not apply to the present case; the doctrine of primary jurisdiction does not preempt the trial court's jurisdiction; and the trial court properly addressed the Employees' defense. [*Id.* at 200 (emphasis supplied)].

We agree with the approach taken by the Court of Appeals of Indiana. If the union seeks to enforce the fine in the courts of New Jersey in circumstances where the employees assert involuntary membership allegedly flowing from misrepresentations relating to their obligation to remain in the union, the defense must be considered on the merits.

Accordingly, the judgment is reversed and the matter is remanded for fact-finding and conclusions as to whether plaintiffs had constructively resigned from the union or were prevented from doing so based on misrepresentations. We do not retain jurisdiction.