COMMUNICATIONS WORKERS OF
AMERICA, LOCALS 5800, 5714,
Appellant (Plaintiff),

v.

Dorothea BECKMAN, Pat Becktell, Elizabeth Bradley, Mitsuko Bush, Rosemary Casey, Paula Devine, Robert Dietrich, Debbie Esselborn, Janet Foley, Debbie Gilreath, Priscilla Jones, Gwendolyn Kimbrough, Valerie Murphy, Price Petty, III, Margaret Randolph, Terry Reed, Annie Robinson, Stephanie Simms, Dan Taylor, Adele Whitehead, Brenda Ross, Appellees (Defendants).

No. 49A04–8703–CV–65.

Court of Appeals of Indiana,
Fourth District.

June 29, 1989.

2.  5 Harper, James & Gray, *The Law of Torts (2d ed.)* § 27.11, p. 215.

John F. Schmitt, Judith A. Stewart, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellant.

Daniel F. Cummings, Cummings & Merriman, Indianapolis, for appellees.

MILLER, Judge.

The Communication Workers of America, Locals 5800 and 5714 (Union) appeal a judgment which denied its attempt to collect fines imposed against alleged union members Dorthea Beckman and twenty (20) other employees of Indiana Bell (Employees) who worked for Indiana Bell during an authorized strike. The Union presents several issues for review, which we restate as follows:

I. Whether the trial court erred by failing to try this matter by jury.

II. Whether the trial court had jurisdiction to consider the membership status of the Employees.

III. Whether the trial court erred in determining that proof of union membership was an essential element of the union's case.

IV. Whether the trial court erred in determining that the union failed to prove union membership.

## FACTS

In August of 1983, the Union conducted a strike against Indiana Bell Telephone Company as part of a nationwide strike against Bell Telephone Systems. The Employees chose not to participate in the strike, crossed Union picket lines and continued to work. The Union filed charges against the Employees alleging that the Employees were union members who, by crossing picket lines, had violated Article XIX, Section 1(c) and 1(e) of the Union's Constitution, which provides:

"Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts:

. . . .

(c) Wilfully violating the Constitution of the Union, Local Bylaws or Rules;

. . . .

(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local."

(R. at 115).

The Employees were given written notice of their respective charges and a hearing before a Union trial panel. All the Employees were found guilty of violating the Union's Constitution and fined. The Employees did not attend their union trials or appeal their fines through the Union's internal appellate procedure. However, when the Union demanded payment, the Employees refused to pay. The Union then filed separate actions against each Employee in Marion County Small Claims Court seeking to enforce and collect these fines. The Employees requested a jury trial, which the court granted, and the cases were transferred to the Marion County Municipal Court.

Although a jury had been requested, a bench trial was commenced on July 15, 1986. Neither party objected to the absence of a jury at this time. The union presented its case-in-chief on this date and the remainder of the case was continued until September 23, 1986. On September 19, 1986, four days before the trial was to continue, the Employees filed a Consolidated Motion for Involuntary Dismissal pursuant to Indiana Rule of Procedure, Trial Rule 41(B), requesting a dismissal of the action because the Union had failed to establish an essential element of its case, that is, that the Employees were union members. The Union filed a response to this motion claiming under Indiana law, proof of union membership is not an element which the Union must prove in order to collect fines assessed against its members in a state court action. However, the Union noted it had presented evidence of union membership. Before trial continued on September 23, 1986, the trial judge noted that he had received the 41(B) motion for Involuntary Dismissal, but had not sufficiently reviewed it. The trial judge asked the parties how they wished to proceed. The judge suggested he could either (1) continue the trial for two weeks and in the interim, read and review the 41(B) motion and the response to it, and make a ruling before the second day of trial or (2) take the 41(B) motion under advisement, hear the Employees' case-in-chief and rule on the 41(B) motion after trial. Counsel for both the Union and the Employees agreed on the record to allow the court to take the matter under advisement and to proceed with the trial. (R. 290–291). However, after the Employees began presenting evidence, counsel for the Union requested a continuance of the remainder of the trial until such time as the court could rule on the 41(B) motion. The court denied this request noting the Union had the opportunity to continue the trial only minutes earlier, but had declined to do so. (R. 302). The trial was completed on September 23,

1986 and on October 17, 1986 the trial court granted the Employees' Consolidated Motion for Involuntary Dismissal, rendering the following Judgment in each case:

### "JUDGMENT

"This cause came before the Court on July 15, 1986, and was continued to September 23, 1986 for a trial, jury having been waived. Parties were present, in person and by counsel.

At close of Plaintiff's case, Defendant moved for Trial Rule 41(B) Involuntary Dismissal. The Court took the motion under advisement and by agreement of counsel, continued with Defendants' case, reserving a ruling on Defendants' Motion until such time as the Court had an opportunity to review the testimony and authority cited and all without prejudice to Defendant.

After a review of the proceedings, the Court found that Plaintiff took special precautions and made a special effort to inform the Court that any evidence introduced should, in no way, be considered as proof of membership in the Union, this being a pre-empted issue. The Court feels otherwise and determines that proof of membership is an essential element of Plaintiff's case."

Following judgment, the Union filed a Motion to Correct Errors, which the trial court denied. The individual cases were then consolidated for the purposes of appeal. (Additional facts appear below where relevant).

### ISSUE I—Improper Jury Waiver

■ The Union contends the trial court erred by proceeding with a bench trial after a jury had been requested. The Union originally filed it's actions in the Marion County Small Claims Court. However, the Employees requested a jury trial and the cases were transferred to the Marion County Municipal Court for trial.[1] However, the Union contends that during a discovery conference with the judge several months before trial, the Employees sought to withdraw their jury demand. The Union claims the trial judge granted the Employees' demand at this time, despite the Union's objections. The Union claims that since it did not consent to this withdrawal, it should not have been granted.[2]

In this case there is no evidence in the record of the Employees' alleged withdrawal of their jury demand, the Union's objection to it, or the court's ruling. However, the court's judgment indicates that the jury was waived.[3] While we cannot determine what happened prior to trial, it is clear from the record that these cases were tried to the court without a jury. It is also clear from the record that neither party objected to the absence of a jury at trial. The Union admits that it did not object at trial, but contends that this was not necessary, as it objected to the withdrawal of the jury at the discovery conference several months before trial. We disagree. It is well settled that a question cannot be raised on appeal unless a proper and timely objection was made in the trial court. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652, 662; *Chustak v. Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 155; *Van Orman v. State* (1981), Ind. App., 416 N.E.2d 1301, 1307.

In *Front v. Lane* (1982), Ind.App., 443 N.E.2d 95, a defendant claimed he was denied a fair trial because the court permitted the plaintiff to withdraw her demand for a jury before trial without the defendant's consent. However, the defendant did not object to the absence of a jury at trial. When the defendant raised this issue on appeal, this court held that by failing to object at trial the defendant had acquiesced

---

**1.** I.C. § 33–11.6–4–10(b) provides in part that: "... upon the filing of a jury trial request, the small claims court shall transfer the claim to the municipal court of the county in which the small claims court is located."

**2.** Ind. Rules of Procedure, T.R. 38(D) provides in part that:

"... a demand for trial by jury made as herein provided may not be withdrawn without the consent of the other party or parties."

**3.** "This cause came before the Court on July 15, 1986, and was continued to September 23, 1986 for a trial, jury having been waived ..."

in the bench trial and waived the issue for appeal.

The case before us is factually similar to *Front, supra.* The Union claims that it did not consent to the withdrawal of the jury, however, it did not object to this withdrawal at trial. Thus, the Union acquiesced in the bench trial and waived this issue for appeal. *Front, supra.* We find no error on this issue.

### ISSUE II—The Court's Jurisdiction to Determine Union Membership

■ Initially, the Union argues that the trial court was without jurisdiction to determine the membership status of the Employees. Specifically, the Union argues that the doctrine of primary jurisdiction places resolution of this issue within the exclusive jurisdiction of the National Labor Relations Board [NLRB]. The Union relies on *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and *Milk Drivers & Dairy Employees Union v. Vevoda,* 772 F.2d 530 (9th Cir.1985) to support its position. This exact issue was dealt with extensively in *Communication Wkrs., L.5900 v. Bridgett* (1987), Ind.App., 512 N.E.2d 195. The *Bridgett* decision resulted from the same strike by the same Union against the same employer and the facts are substantially similar to the present case.[4]

In *Bridgett, supra,* forty-four employees of Indiana Bell chose not to participate in the Union's nationwide strike against Bell Telephone systems, crossed Union picket lines and continued to work. The Union charged each employee with violating Article XIX, Section 1(c) and 1(e) of the Union's constitution: the provision permitting the Union to fine its members for working during an authorized strike without proper Union authorization. The employees were given written notice of their charges and a hearing before a Union trial panel. Several of the employees were tried in absentia and fined. The employees did not pay their fines or appeal them through the Union's internal appellate procedure.

The Union in *Bridgett, supra,* filed separate actions against each employee in the Marion County Small Claims Court to enforce and collect these fines.[5] At trial, the Union presented evidence that the employees were enrolled as members of the union when they crossed picket lines and worked during the strike. The employees presented evidence that they had resigned prior to the strike and were no longer card-carrying members when they crossed Union picket lines. The trial court rendered judgment in favor of the employees and the Union appealed. On appeal, the Union claimed that the trial court was without jurisdiction to determine the membership status of the employees, specifically arguing that the doctrine of primary jurisdiction placed resolution of this issue within the exclusive jurisdiction of the NLRB. The Union in *Bridgett* argued that the trial court's consideration of the employees defense contravened federal precedent, relying on *Milk Drivers and Dairy Employees v. Vevoda,* 772 F.2d 530 (9th Cir.1985).

In *Vevoda,* a union instituted an action to collect fines levied against three of its members who violated the union's bylaws by working behind a picket line during a strike. The members in *Vevoda* argued they had been fraudulently induced to join the union.[6] The district court addressed and resolved this defense in favor of the members. However, the Ninth Circuit Court of Appeals held the district court in *Vevoda* lacked jurisdiction to consider the members defense stating:

---

**4.** In *Bridgett, supra* the Communication Workers of America sought to enforce fines imposed against several employees of Indiana Bell Telephone Company for allegedly violating the same constitutional provision involved in this appeal.

**5.** The cases were later removed and consolidated for trial in the Marion County Municipal Court.

**6.** The employees were told that, pursuant to a valid union security provision in the collective bargaining agreement, they had to become union members as a condition of employment, and were not told that under recent case law, the membership requirements could be satisfied by merely paying dues.

Consideration of the defense in this case requires the district court to evaluate a union's dealings with employees about union membership. This is conduct closely regulated by sections 7 and 8 of the NLRA. A defense requiring judicial scrutiny of such activity is normally considered to be outside the jurisdiction of the district courts in section 301 contract actions and within the exclusive jurisdiction of the NLRB in the context of unfair labor practice disputes. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Gardner v. Teamsters Union*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); *Beriault v. Local 40, Super Cargoes & Checkers of I.L. & W.U.*, 501 F.2d 258 (9th Cir.1974).

*Id.* at 532.

However, Chief Judge Ratliff, writing for this court in *Bridgett*, rejected the Union's argument. In a well reasoned opinion, Judge Ratliff explained the doctrine of primary jurisdiction,[7] noting the general rule that federal courts do not have jurisdiction over activity which is "arguably subject to § 7 or § 8 of the National Labor Relations Act." *Id.* at 198 (quoting *Garmon*, 359 U.S. at 245, 79 S.Ct. at 780). However, Judge Ratliff also noted that the general rule has not been given a broad mechanical application to bar all suits or defenses that arise in labor relations cases from being decided by the courts.[8] In this regard, Judge Ratliff noted that the doc-

trine of primary jurisdiction does not apply to preempt the court's jurisdiction to interpret and enforce contracts, citing *Kaiser Steel Corp. v. Mullins* (1982), 455 U.S. 72, 83–84, 102 S.Ct. 851, 859–860, 70 L.Ed.2d 833.[9]

In *Bridgett, supra* the defense of nonmembership and resignation raised by the employees involved the contractual question of whether the employees were parties to the contract and members of the Union at the time of the strike. Judge Ratliff stated that this contractual issue "is not one that involves an activity that is arguably protected by § 7 or prohibited by § 8 of the NLRA" and therefore, is not preempted by the doctrine of primary jurisdiction.[10] *Id.* at 198.

Judge Ratliff distinguished *Vevoda*, noting that in *Vevoda* there was no dispute that the employees had joined the local union and were regarded as members in good standing until the time the fines were levied. At no time did the employees in *Vevoda* question their membership or seek to resign their membership. Judge Ratliff noted that the Employees in *Bridgett*, unlike *Vevoda*, were challenging their union membership status, claiming that they were not members and had resigned prior to the strike. Further, Judge Ratliff noted that the employees in *Bridgett*, unlike *Vevoda*, were not attempting to void the agreement, but were merely arguing that the union failed to establish that they were Union members. Judge Ratliff stated:

7. Judge Ratliff explained that the doctrine of primary jurisdiction arises out of the United States Supreme Court's interpretation of the National Labor Relations Act and that in *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, the United States Supreme Court held that Congress intended that matters of national labor policy be decided in the first instances by the NLRB.

8. Judge Ratliff stated that the doctrine of primary jurisdiction is limited to its primary justification which is, "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose." *Bridgett*, 512 N.E.2d at 198 (quoting *Vaca v. Sipes* (1967), 386 U.S. 171, 180–81, 87 S.Ct. 903, 911–12, 17 L.Ed.2d 842).

9. In *Mullins,* the Supreme Court held that the doctrine of primary jurisdiction does not preclude a district court from determining whether a provision in a collective bargaining agreement violates Section 8(e) of the NLRA, 29 U.S.C. § 158(e) (hot cargo clause).

10. In *Bridgett, supra* this court also held that even if the employees' defense arguably involved an issue of unfair labor practice governed by §§ 7 and 8 of the NLRA, the trial court still had jurisdiction to hear the defense. The court noted that when a labor dispute involves both a breach of contract and an unfair labor practice charge, the NLRB and the court's have concurrent jurisdiction to resolve the dispute.

Thus, the rationale of *Vevoda* does not apply to the present case; the doctrine of primary jurisdiction does not preempt the trial court's jurisdiction; and the trial court properly addressed the Employees' defense.

*Bridgett,* 512 N.E.2d at 200.

The case before us is similar to *Bridgett, supra.* Here, the Employees' alleged in their answers that they resigned or attempted to resign from the Union prior to the strike.[11] Thus, the Employees' defense of resignation in this case involves the contractual question of whether the Employees were members of the Union at the time of the strike. As determined in *Bridgett, supra* this contractual issue is not one that involves an activity that is arguably protected by § 7 or prohibited by § 8 of the NLRA, and therefore, it is not preempted by the doctrine of primary jurisdiction. Under the reasoning of *Bridgett, supra,* we hold the trial court had jurisdiction to consider the membership status of the Employees.[12]

*ISSUE III—Proof of Union Membership*

Next, the Union contends the trial court's determination that proof of Union membership was an essential element of the Union's case is contrary to law. The Union claims this court's opinion in *Communication Workers of America v. Drake* (1985), 487 N.E.2d 821, clearly illustrates that proof of Union membership is not an element which the Union must prove in a state court proceeding to collect fines assessed by the Union against its members. As with *Bridgett, supra,* the *Drake* decision resulted from the same strike by the same Union against the same employer. In *Drake,* the Communication Workers of America appealed a decision which denied its attempt to collect a fine imposed against

Darlene Drake. Drake, an employee of Indiana Bell and a Union member for over twelve years, chose not to participate in the Union's strike against Bell Telephone systems. When Drake crossed Union picket lines and continued to work, the Union charged her with violating Article XIX, Section 1(c) and 1(e) of the Union's constitution: the provision permitting a Union member to be fined for working during an approved strike without Union authorization. Drake was given written notice of the charges and a hearing before a Union trial panel. She was found guilty of violating the Union's constitution and fined. Drake did not attend the hearing or appeal the fine through the Union's internal appellate procedure. When attempts to collect the fine failed, the Union sought court assistance. However, the trial court refused to enforce the Union's decision and fine and the Union appealed.

The issues before this court in *Drake, supra* were (1) whether a fine imposed pursuant to a labor union constitution may be enforced in the courts of Indiana and (2) whether Drake was afforded due process by the Union in the imposition of the fine against her.[13] This court noted that under Indiana law, the constitution and bylaws of a labor organization are viewed as a contract between the organization and its members and, as with other contracts, either party may seek court assistance in enforcement when they perceive of breach of the agreement. The court noted the constitution of the Union was a valid, enforceable contract, which Drake had breached, and held the trial court had the authority to enforce the Union's constitution, including the collection of the fine.

The *Drake* court also concluded the Union provided Drake with adequate due pro-

---

11. The Employees do not claim that they were never Union members, but only that they resigned prior to the strike.

12. The Union challenges the *Bridgett, supra* decision as contrary to law claiming that it improperly analyzes federal case law, namely, *Vevoda, supra,* and *Mullins, supra.* However, the *Bridgett* decision has not been overruled or criticized in any way. In fact, other jurisdictions

have cited *Bridgett* with approval. *Local 827 v. Trad,* 223 N.J.Super. 561, 539 A.2d 316 (A.D. 1988), *certification denied,* 111 N.J. 592, 546 A.2d 516.

13. This court was also presented with the issue of whether the trial court erred in failing to enforce the Union fine imposed upon Drake.

cess safeguards.[14] In reaching this conclusion, the court noted that a Union's internal actions are presumed just and correct and consequently, a court will not interfere in a Union's internal decisions unless they are unreasonable or contrary to public policy. In the context of disciplinary proceedings, this court stated: "a court will not interfere in disciplinary actions unless a member is denied his due process rights." *Id.* at 824.

In the present case, the Union relies on this language for its proposition the Union is not required to prove Union membership in a state court proceeding to enforce the Union's decision and fine. The Union claims their own panel's decision, including its determination that each Employee was a Union member, is presumed correct. Thus, the Union is not required to re-prove this issue in the state court proceeding. Rather, the Union claims the state court's inquiry is limited to whether the Union trial panel provided the Employees with procedural due process, and if so, the court must enforce the Union's decision and fine.

However, the Union's interpretation of our decision in *Drake, supra* is mistaken. In *Drake*, this court held the constitution was a valid contract and the trial court possessed the authority to enforce it. There was no discussion of what the Union was required to prove in the state court proceeding before the court would enforce the constitution against Drake.[15] Moreover, Drake never challenged her Union membership. In the present case, the Employees *are* challenging their Union membership status. All Employees alleged in their answers that they had resigned or attempted to resign prior to the Union strike. Thus, the Union's reliance on *Drake, supra* is misplaced. In our opinion, the case before us is more appropriately analyzed under the reasoning of this court's opinion in *Bridgett.*

As noted earlier, in *Bridgett,* this same Union sought court assistance to enforce and collect fines assessed against Union members for violating the same Union constitutional provisions involved in this appeal. At trial, the Union presented evidence that the employees were enrolled as members of the Union when they crossed the picket lines and worked during the strike. The employees presented evidence that prior to the strike they resigned and were no longer card-carrying members when they crossed the picket lines.[16] After trial, the court entered judgment against the Union and they appealed. The thrust of the employees' argument in *Bridgett,* was that the Union failed to establish that they were Union members. This court stated "such a defense is merely the converse to the Union's burden of proof on membership which must be met before fines can be imposed." *Id.* at 200. This court also noted that the employees' defense of non-membership and resignation involved a contractual question of whether the employees were parties to the contract and members of the Union at the time of the strike. The court stated the employees' defense was "merely a negative response to the Union's affirmative burden of establishing that the employees were parties to the contract that the Union was trying to enforce." *Id.* at 198. The court further stated "[i]f the Union failed to establish that the employees were members of the Union during the days they worked behind picket lines, then the court could not enforce the fines the Union imposed under the [Union's] constitution." *Id.* at 198.

■ The thrust of the Employees' argument in this appeal is that the Union failed to establish that they were Union members.

---

**14.** The court also determined that the trial court erred in refusing to enforce the Union's decision and fine against Drake.

**15.** However, since the constitution is considered a contract between the Union and Drake, it seems logical that the Union would have to prove that Drake was a Union member, i.e., a party to the contract, before the trial court could enforce the constitution against her.

**16.** We note that the employees in *Bridgett, supra,* (just as the Employees in this case) did not attend their Union trial or appeal their fines through the Union's internal appellate procedure, but raised this defense of resignation for the first time at the trial court level.

Just as in *Bridgett, supra* the Employees in this case claim they resigned or attempted to resign prior to the strike. Relying on the reasoning in *Bridgett, supra* we hold the Union had the burden of establishing Employees were members of the Union on the days of the alleged Union violations before the trial court could enforce the fines imposed against them under the Union's constitution.

## ISSUE IV—Denial of Continuance

■ The Union contends that the trial court erred in denying its motion for a continuance. After the Union presented its case-in-chief, the Employees filed a Motion for Involuntary Dismissal pursuant to Ind. T.R. 41(B). The Union filed a motion in response. On the second day of trial, prior to the presentation of the Employees' case-in-chief, the trial judge noted that he had received the 41(B) Motion for Involuntary Dismissal and the Union's response to it, but had not sufficiently reviewed them. The trial judge asked the parties how they wished to proceed. The judge suggested he could either (1) continue the trial for two weeks and, in the interim, read and review the 41(B) motion and make a ruling on it or (2) take the motion under advisement, hear the Employees' case-in-chief and rule on the 41(B) motion after trial. Counsel for both the Union and the Employees agreed on the record to allow the court to take the matter under advisement and to proceed with trial. (R. 290–291). However, after the Employees began presenting evidence, counsel for the Union requested a continuance of the remainder of the trial until such time as the court could rule on the 41(B) motion. The court denied this request noting that the Union had the opportunity to continue the trial only minutes earlier, but had declined to do so. (R. 302).

The Union claims that the court's failure to grant this continuance denied the Union a fair trial because it denied the Union "the opportunity to reopen its case to offer evidence on the issue of membership and placed the plaintiff [Union] in the catch–22

position of either presenting evidence on the membership issue and thus waiving the jurisdictional objection for appeal, or failing to present evidence on an issue which might be determined by the court to be an essential element of the plaintiff's [Union's] case." (p. 30 of Union's brief).

We note that a trial court is not required to grant a motion for a continuance. *Ind. Tri–City Plaza Bowl v. Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, 673; *City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55, 61. Trial court's are governed by Ind.T.R. 53.5 in ruling on a motion for continuance. This rule provides in part:

> Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon agreement of all the parties or upon a showing of good cause established by affidavit or other evidence....

Thus, the trial court has the discretion necessary for granting continuances. *Ind. Tri–City Plaza Bowl, supra; City of Indianapolis, supra.* This court will reverse only for a clear abuse of that discretion. *Id.* In order to demonstrate an abuse of discretion, the Union must show harm resulting from the denial of its motion. *Id.*

In this case, the Union claims the court's refusal to grant a continuance until ruling on the 41(B) motion denied it the opportunity to reopen its case to offer evidence on the issue of Union membership. However, when the court offered to continue the trial for two weeks to rule on the motion, the Union's counsel *agreed to forego* the continuance and to proceed with trial. Moreover, the trial court never denied the Union the opportunity to present evidence on the issue of Union membership. The trial court specifically stated that if the Union wanted to present evidence of the Employees' Union membership the court would admit it. (R. 363). Under these circumstances, the Union has not demonstrated such harm or prejudice as to constitute an abuse of discretion. We find the trial court did not err in denying the Union's Motion for Continuance.[17]

17. The Union also claims that the Employees waived their Motion for Involuntary Dismissal

by not renewing the motion at the close of all the evidence. We note that T.R. 41(B) does not

## ISSUE V—Proof of Union Membership

Finally, the Union claims the trial court erred in granting the Employees' motion for involuntary dismissal pursuant to T.R. 41(B). The Union argues that although it maintained that it was not required to prove the Employees were union members, it did, in fact, do so. We find that with respect to eleven Employees the Union's claim is correct.

In this case, the Employees filed a motion for involuntary dismissal after the Union's case-in-chief claiming the Union had failed to prove an essential element of its case, namely union membership. The Union filed a brief in opposition claiming it is not required to prove union membership in a state court proceeding to collect fines against its members. However, the Union noted it had presented evidence of union membership. (R. 72). Before the second day of trial, the trial judge noted he had received the T.R. 41(B) motion and the Union's response to it, but had not sufficiently reviewed them. The judge stated that if the parties agreed, he would take the motion under advisement, hear the Employees' case-in-chief and rule on the motion after trial, but "prior to ruling on the case-in-chief." (R. 291). After trial, the judge granted the 41(B) motion finding that proof of union membership was an essential element of the Union's case. Implicit in this judgment is the finding that the Union failed to prove the Employees were union members.[18] The Union claims this finding is contrary to the evidence, because the evidence presented clearly proves each Employee was a union member during the time period for which they were fined.

When trial is to the court, a defendant can test the sufficiency of a plaintiff's evidence by moving for an involuntary dismissal pursuant to T.R. 41(B). *Benefit Trust Life Insurance Co. v. Waggoner* (1985), Ind.App., 473 N.E.2d 646, 674. In ruling on this motion, the trial court as trier of fact can weigh evidence and determine the credibility of witnesses in deciding whether a party has sustained its burden of proof. *Id.* at 648; 3 *Harvey, Ind. Practice* § 41.7 at 152 (1988). In ruling on the 41(B) motion in this case, it appears the trial judge only considered the evidence presented during the Union's case-in-chief. Unlike the case where a trial judge specifically declines to render judgment on a 41(B) motion until the close of all the evidence because he is uncertain as to whether the plaintiff's evidence shows a right to recovery, the trial judge in this case noted he had not reviewed the Employees' 41(B) motion or the Union's response to it and could not make an intelligent ruling. Rather than continue trial in order to rule on the motion, the trial judge took the motion under advisement, heard the Employees' case-in-chief (apparently for the convenience of the parties and witnesses who were assembled in court for trial) and, after both sides rested, made his ruling on the matter three weeks after trial. Thus, in reviewing the court's determination that the Union failed to prove the Employees

state that the proponent of the motion is required to renew the motion at the close of all the evidence when, as here, the court has taken the motion under advisement. However, we need not discuss this issue as we find that the Union has waived consideration of this alleged error. According to our Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), an appellant's argument with respect to any claimed error must be supported by citation to authority, statutes, and parts of the record upon which he relies. Failure to supply the Court of Appeals with citation to authority and citation to the relevant portions of the record constitutes a waiver of the alleged error. *Howard v. State* (1985), Ind., 481 N.E.2d 1315; *Hebel, supra.* Here, the Union has failed to cite any authority in its brief to support this proposition. Further, there is not one citation to relevant portions of the record. Finally, we note that any error not raised in the motion to correct errors is generally deemed waived on appeal. *Siebert Oxidermo, Inc. v. Shields* (1983), Ind., 446 N.E.2d 332; *Pope v. Marion County Sheriff's Merit Board* (1973), 157 Ind.App. 636, 301 N.E.2d 386. Here, the union failed to raise this error in its motion to correct errors. For all the foregoing reasons, we find that the Union has waived the consideration of this alleged error on appeal.

18. Neither party requested findings in this case as directed by T.R. 52(A), which makes specific reference to 41(B). If findings are not requested, a trial court may make a general finding for or against the party with the burden of producing evidence. 3 *Harvey, Ind. Practice* § 41.7 at 153 (1988).

were union members, we consider only the evidence presented during the Union's case-in-chief.

■ In this case the Union is appealing from an involuntary dismissal granted pursuant to T.R. 41(B). Consequently, the Union is appealing a negative judgment. *State ex rel. Medical Licensing Board v. Stetina* (1985), Ind.App., 477 N.E.2d 322, 326; *Burras v. Canal Const. and Design Co.* (1984), Ind.App., 470 N.E.2d 1362, 1368. On appeal, this court will not reverse a negative judgment unless it is contrary to law. *Id.; Pepinsky v. Monroe County Council* (1984), Ind., 461 N.E.2d 128. A judgment is contrary to law if the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. *Id.*

Here, the Union claims the trial court's determination is contrary to law because the uncontradicted evidence shows all the Employees were union members for the time period for which they were fined. The Union points out that during its case-in-chief Robert Michael Brunning, Union Steward of Local 5800 and Linda Bennett, Clerical Assistant of Local 5714, identified transcripts of the Employees Union trials held by the Union trial court. These transcripts were offered for the purpose of showing what evidence the Union trial court considered in rendering the fines against the Employees. Included in each transcript was a list, prepared by Indiana Bell, of employees who Indiana Bell believed were dues paying members of the Union.[19] These lists identified each Employee as a dues paying member of the Union during the time period for which they were fined.

■ However, the Employees objected to the introduction of these lists on the grounds that they were hearsay since they were prepared by a third party who was not present at trial to authenticate them. After a lengthy discourse between the court and counsel the Union stipulated on the record that these employee lists were not being offered to prove actual membership in the Union, but merely offered to demonstrate what evidence the Union trial court considered during the Employees individual Union trials. However, on appeal, the Union argues in its brief that:

> [a]lthough the dues paying membership records were admitted at trial for the limited purpose of showing what evidence was considered by the Union Trial Court, R. at 226–30, this Court should not close its eyes to such evidence of the issue of whether in fact the Defendants were members of the Plaintiff Union.... Plaintiff respectfully contends that the evidence of the dues paying membership records should, at this time, be considered as evidence on each issue as to which it applied, including the issue of the Defendants' membership in the Plaintiff Union.

We note that where a stipulation is offered in court and no objection is made, the parties are bound by the stipulation. *Viccaro v. City of Ft. Wayne* (1983), Ind.App., 449 N.E.2d 1161, 1163; *Cole v. Sheehan Const. Co.* (1944), 115 Ind.App. 303, 57 N.E.2d 625. In this case the Union stipulated the employee lists were admitted into evidence for the limited purpose of demonstrating what the Union trial court considered during the Employees' Union trials. The Union is bound by this stipulation and therefore, these lists cannot be considered as evidence of actual Union membership on appeal.

However, there is merit to the Union's claim that the uncontradicted evidence clearly establishes that at least eleven (11) of the twenty-one Employees were Union members during the time period for which they were fined. During the Union's case-in-chief, the local Union stewards testified that eleven Employees (Elizabeth Bradley, Rosemary Casey, Debbie Gilraeth, Gwendolyn Kimbrough, Valerie Murphy, Price Petty, Terry Reed, Annie Robinson, Brenda Ross, Stephanie Sims, and Adele White-

---

19. Reference was made to a second list prepared by Indiana Bell of employees who pay the equivalent of Union dues but who are not members of the Union. (R. 214–217). The Union steward testified that these lists are prepared by Indiana Bell and sent to the Union's local offices. (R. 214).

head) resigned from the Union either during or after the strike.[20] Xerox copies of these Employees' resignation letters were admitted into evidence at this time.[21] (R. at 164–192, 210, 239, 243, 247, 255, 259, 262, 274, 282). The Union stewards testified the fines assessed against these eleven Employees were not based in any part on the fact that the Employees resigned from the Union and the Employees were not fined for any activity that occurred after receipt of the resignation letters.

The resignation letters are handwritten, signed by each Employee and each Employee stated in his or her letter that he or she wished to resign their membership in the Union effective immediately. Several Employees returned their Union cards with their resignation letters. All of the letters revealed that these eleven Employees resigned *either during or after the strike.* The Union claims that this uncontradicted evidence establishes that these eleven Employees were members of the Union during the time period for which they were fined. The Union asserts "it is axiomatic that if the defendants resigned from the plaintiff Union, they were members until their resignation."

We agree. We regard the Employees' resignation letters as admissions. An "admission" is a statement against the interest of a party that is inconsistent with his defense or tends to establish or disprove a material fact. *Senff v. Estate of Levi* (1987), Ind.App., 515 N.E.2d 556, 559, *trans. denied; Uebelhack Equipment, Inc. v. Garrett Bros., Inc.* (1980), Ind.App., 408 N.E.2d 136, 138. Any statement made or attributed to a party which constitutes an admission against his or her interest and tends to establish or disprove a material fact in the case is competent evidence against that party. *Indiana State Highway Com'n v. Vanderbur* (1982), Ind.App.,

432 N.E.2d 418, 422. Here, reference to the Employees' answer reveals that one of their defenses was that they had resigned from the Union prior to the strike. However, the resignation letters reveal the Employees resigned during or after the strike.

The only reasonable inference from this uncontradicted evidence is that these eleven Employees were union members up until the resignation. Additionally, the Union stewards testified the fines assessed against these eleven Employees were not based in any part on the fact that the Employees resigned from the Union and the Employees were not fined for any activity that occurred after receipt of the resignation letters. The evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. Thus, the trial court's determination that the Union failed to prove union membership is contrary to law, at least as to these eleven Employees.

Therefore, for the reasons given, we reverse the dismissal as to the eleven Employees (heretofore designated in this opinion) and remand the cause to the trial court with instructions to enter judgment with respect to these eleven Employees based upon all the evidence presented at trial.

CONOVER, P.J., and GARRARD, J., concur.

---

20. The Union stewards testified that the strike began on August 6, 1983 and ended on August 26, 1983.

21. The Union steward, Brunning, testified that although there is no written policy outlining the procedures for resignation from the Union, a member may resign in one of two ways. The member can either appear at the local Union office and give an oral resignation or mail a letter of resignation to the local office. If the member sends a letter of resignation to the local Union office, their resignation is effective on the date that the Union receives the letter. Brunning testified that a secretary at the local Union office stamps the incoming mail to indicate when it is received. (R. 167–169).