FILED

Mar 23 2017, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Patrick L. Proctor
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
CHAUFFEURS, TEAMSTERS, AND
HELPERS LOCAL UNION NO. 414

Geoffrey S. Lohman
David T. Vlink
Fillenwarth Dennerline Groth & Towe, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John E. Warner, Jr.; Rick Clay; Sam Early; Brian Goeglein; Mike Campbell; Brad Wilson; and John Zimmerman; | March 23, 2017 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 02A04-1608-PL-2017 |
| v. | Appeal from the Allen Superior Court |
| Chauffeurs, Teamsters, and Helpers Local Union No. 414 and Speedway Redi Mix, Inc., | The Honorable Stanley A. Levine, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 02D03-1511-PL-524 |

**Bradford, Judge.**

# Case Summary[1]

[1] Appellees-Defendants Speedway Redi Mix, Inc., ("Employer") and Chauffeurs, Teamsters, and Helpers Local Union No. 414 ("the Union") were parties to a collective-bargaining agreement ("the CBA") that ran from May 1, 2013, through March 31, 2016. Employer is an Allen County company that produces and sells concrete, while the Union is the collective-bargaining representative of Employer's truck drivers. The CBA included union security language ("the Clause") which made membership in the Union a condition of employment for qualifying employees and authorized Employer to withhold union dues from their wages.

[2] In early 2015, a part-owner of Employer approached Plaintiffs-Appellants John E. Warner, Jr., *et al.*, who were truck drivers at Employer ("the Drivers") and offered to transfer their employment to another company he apparently controlled, Speedway Construction Products Corp. ("SCP"). The Drivers all had, at various times, voluntarily executed dues checkoff authorizations ("Dues Checkoffs") that allowed Employer to withdraw union dues from their wages for distribution to the Union. The Drivers accepted the owner's offer, resigned from Employer and the Union, and began work at SCP, apparently still hauling

[1] Oral argument was heard in this case on March 3, 2017, at the Maurer School of Law at Indiana University in Bloomington, Indiana, and was attended by students and faculty of that school, the School of Public and Environmental Affairs, and the Kelley School of Business. We would like to thank the Indiana University students, staff, faculty and administration who provided us with their hospitality and assistance. We would also like to thank counsel for the high quality of their written submissions and oral presentations.

Employer product, however. The Union filed several unfair labor practice complaints against Employer with the National Labor Relations Board ("NLRB"), which were ultimately settled by Employer and the Union. Pursuant to the settlement, the Drivers would return to Employer at their previous wage and benefit levels and still pay dues to Employer for transfer to the Union.

[3]     In 2015, the Drivers filed a complaint in the trial court against Employer and the Union, alleging that the Union was receiving their union dues in violation of Indiana's right-to-work law ("the Act") and seeking recovery of dues already paid under a theory of money had and received. At the same time, Plaintiff Warner filed a claim of unfair labor practice with the NLRB. In June of 2016, the NLRB dismissed Warner's claim. In July of 2016, the trial court dismissed the Drivers' claims, ruling that (1) they had failed to state a claim upon which relief could be granted because although the Act had rendered the Clause null and void, the Dues Checkoffs remained valid, and (2) their claims were preempted by federal law in any case. The Drivers contend on appeal that the trial court erred in granting the Union's motion to dismiss because they were not required to prove the existence of the Clause in order to maintain their cause of action, the relevant federal law contains exceptions for state-enacted right-to-work laws, and the Dues Checkoffs are invalid in any event. We agree with the Drivers that the trial court erred in dismissing the Drivers' claim that they were required to remain members of the Union in violation of the Act but agree with the Union that the Drivers' claim based on the Dues Checkoffs is

preempted by federal law. Consequently, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[4] Employer and the Union were parties to the CBA, which ran from May 1, 2013, through March 31, 2016. Employer is an Allen County company that produces and sells concrete, while the Union is the collective-bargaining representative of Employer's truck drivers. Article 4 of the CBA contains the Clause, requiring each qualifying Employer employee to join and maintain membership in the Union as a condition of employment. Section 4.04 provides, however, that "[i]t is understood that the above [union security] language … is only effective to the extent that it is permitted by Indiana State and Federal law." Appellant's App. Vol. II p. 40.

[5] In March of 2015, Todd Frederick, an owner of Employer and SCP, offered employment at SCP to the Drivers. At SCP, the Drivers apparently would still be hauling Employer's product, much as they had before. At various times, it is undisputed that all of the Drivers had executed Dues Checkoffs authorizing Employer to deduct dues to be paid over to the Union.[2] The Drivers accepted Frederick's offer, resigning from Employer, withdrawing from the Union,

---

[2] The actual Dues Checkoffs have not been made part of the record in this case, and we decline the Union's request to take judicial notice of them.

beginning their work for SCP, and becoming members of the International Association of Machinists, Local 2569 ("Local 2569.")

[6] On March 17, 2015, the Union filed the first of four unfair labor practice complaints against Employer and/or SCP with the NLRB, alleging various violations of the National Labor Relations Act ("the NLRA"). During this period, the Union conducted a strike by Employer's employees. On October 3, 2015, the NLRB regional director approved a settlement agreement between Employer, SCP, and the Union. Among other terms, Employer and SCP were obligated to post a notice to employees and conduct themselves consistent with the following:

> WE WILL NOT tell you that you need to withdraw from [the Union] or any other labor organization.
>
> WE WILL NOT interfere with your relationship with your union by encouraging you to switch your employment from [Employer] to [SCP].
>
> WE WILL NOT assist [Local 2569], including by encouraging you to withdraw from your Union and to switch your employment from [Employer] to [SCP].
>
> WE WILL NOT give effect to your dues check-off authorizations for [Local 2569], and WE WILL continue to give effect to your check-off authorizations for the [the Union].
>
> WE WILL resume assigning work to the bargaining unit … as previously done prior to March 16, 2015.
>
> WE WILL restore your wages, benefits, seniority and other terms and conditions of employment to what they were before we changed them when we applied the terms of our collective bargaining agreement with [the Machinists] rather than the terms of our collective bargaining agreement with [the Union].

Appellant's App. Vol. II p. 13.

[7] Following approval of the settlement agreement, the Drivers' employment was transferred back to Employer, with their seniority, wages, and all other terms of employment the same as before they left to work for SCP. Employer resumed withholding union dues from the Drivers' paychecks and paying those dues to the Union pursuant to Dues Checkoffs that the Drivers had executed before going to work for SCP.

[8] On November 12, 2015, the Drivers filed a complaint in the trial court against Employer and the Union, alleging the Union of violating the Act by compelling them to remain members of and pay dues to the Union and seeking the return of those dues pursuant to the doctrine of money had and received. Also on November 12, 2015, Plaintiff Warner filed an unfair-labor-practices charge with Region 25 of the NLRB, alleging violations related to the continued withholding of union dues by Employer for payment to the Union. On January 29, 2016, the regional director of the NLRB dismissed Warner's charge, finding no NLRA violation.

[9] On February 4, 2016, the Union moved to dismiss the Drivers' complaint. The Union requested dismissal of the Drivers' complaint pursuant to the Act for failure to state a claim and lack of subject matter jurisdiction as a result of preemption by federal labor law. On May 16, 2016, the trial court held a hearing on the Union's motion to dismiss the Drivers' claims against it.

Meanwhile, Warner appealed the dismissal of his unfair-labor-practices charge to the NLRB's General Counsel, who affirmed the dismissal on June 17, 2016.

[10] On July 22, 2016, the trial court granted the Union's motion to dismiss the Drivers' complaint. The trial court concluded that the Drivers had failed to state a claim upon which relief could be granted because the Act rendered the Clause inoperative, meaning that nothing left in the CBA required them to maintain membership in the Union or pay dues as a condition of employment. The trial court, however, noted that the Drivers had executed Dues Checkoffs before leaving Employer for SCP, which the trial court concluded were unaffected by the Act or the temporary move to SCP and allowed Employer to continue to withhold dues to be paid to the Union. The trial court also concluded that it lacked jurisdiction over all claims related to the allegedly unlawful collection and retention of dues by the Union, as they were preempted by federal law.

# Discussion and Decision

[11] Pursuant to Indiana Code section 22-6-6-8 of the Act,

> A person may not require an individual to:
> (1) become or remain a member of a labor organization;
> (2) pay dues, fees, assessments, or other charges of any kind or amount to a labor organization; or
> (3) pay to a charity or third party an amount that is equivalent to or a pro rata part of dues, fees, assessments, or other charges required of members of a labor organization;
> as a condition of employment or continuation of employment.

Moreover, pursuant to Indiana Code section 22-6-6-12,

> (a) If an individual suffers an injury:
> (1) as the result of any act or practice that violates this chapter; or
> (2) from a threatened violation of this chapter;
> the individual may bring a civil action.
> (b) A court may order an award of any or all of the following to an individual who prevails in an action under subsection (a):
> (1) The greater of:
> (A) actual and consequential damages resulting from the violation or threatened violation; or
> (B) liquidated damages of not more than one thousand dollars ($1,000).
> (2) Reasonable attorney's fees, litigation expenses, and costs.
> (3) Declaratory or equitable relief, including injunctive relief.
> (4) Other relief the court considers proper.
> (c) The remedies and penalties set forth in subsection (b) are:
> (1) cumulative; and
> (2) in addition to other remedies and penalties imposed for a violation of this chapter.

[12] The Drivers alleged in their complaint that the Union and Employer violated Indiana Code subsection 22-6-6-8(1) by "requir[ing] the Plaintiffs to become or remain members of the Teamsters Union" and subsection (2) by requiring them "to pay dues, fees and assessments or other charges to the Teamsters over the Plaintiffs' objections[.]" Appellant's App. Vol. II p. 31.

# I. Whether the Drivers Failed to State a Claim Pursuant to Indiana Code Subsection 22-6-6-8(1)

[13] The Drivers argue that the trial court erred in granting the Union's motion to dismiss their claim pursuant to the Act on the ground that they failed to state a claim upon which relief can be granted.

> A complaint is not subject to dismissal unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *State v. Rankin* (1973), 260 Ind. 228, 230, 294 N.E.2d 604, 606; *First Nat. Bank of Danville v. Reynolds*, (1986), Ind. App., 491 N.E.2d 218, 220. The allegations of the complaint are taken as true and the plaintiff is entitled to all reasonable inferences which could be drawn therefrom. *Id.*; *Gladis v. Melloh* (1971), 149 Ind. App. 466, 469, 273 N.E.2d 767, 769. On appeal from a denial of a motion to dismiss, we apply essentially the same standard as the trial court to see whether the trial court acted properly in denying the Motions to Dismiss under T.R. 12(B)(6). *Iglesias v. Wells,* (1982), Ind. App., 441 N.E.2d 1017, 1018.

*Bentz Metal Prod. Co. v. Stephans*, 657 N.E.2d 1245, 1247 (Ind. Ct. App. 1995).

[14] We conclude that the Drivers have stated a claim under Indiana law upon which relief can be granted and over which we have jurisdiction.

> The doctrine of primary jurisdiction … arises out of the United States Supreme Court's interpretation of the National Labor Relations Act (NLRA). *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775. In *Garmon* the Supreme Court held that Congress intended that matters of national labor policy be decided in the first instance by the NLRB. To protect this intent the Supreme Court provided, that as a general rule, federal courts do not have jurisdiction over activity which is "arguably subject to § 7 or § 8 of the National

Labor Relations Act."[3]  *Garmon,* at 245, 79 S. Ct. at 780, 3 L. Ed. 2d at 783.

> The general rule of primary jurisdiction, however, has not been given a broad mechanical application to bar all suits or defenses that arise in labor relations cases from being decided by the courts. *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters* (1978), 436 U.S. 180, 188-89, 98 S. Ct. 1745, 1753, 56 L. Ed. 2d 209, 220.

*Commc'n Workers of Am., Local 5900 v. Bridgett*, 512 N.E.2d 195, 198 (Ind. Ct. App. 1987) (footnote omitted).

[15]  We have squarely held that "[t]he issue of membership status *vel non* is not covered by sections 7 or 8 of the NLRA, and accordingly, not preempted by the doctrine of primary jurisdiction." *Id.* at 198; *see also Commc'ns Workers of Am., Locals 5800, 5714 v. Beckman*, 540 N.E.2d 117, 123 (Ind. Ct. App. 1989) ("Under the reasoning of *Bridgett*, *supra*, we hold the trial court had jurisdiction to consider the membership status of the Employees."). We conclude that, pursuant to *Bridgett*, the trial court erred in granting the Union's motion to dismiss the Drivers' claim that they were required to become and/or remain

---

[3]  Section 7 of the NLRA provides as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. §157. Section 8 defines what constitutes unfair labor practices by employers or labor organizations. *See* 29 U.S.C. §158.

members of the Union. The Drivers allege that the Union and the Employer violated the Act by requiring them to become and/or remain members of the Union; this is sufficient to state a claim which survives a Trial Rule 12(B)(6) motion.

[16] In dismissing the Drivers' claim pursuant to the Act, the trial court accepted the Union's argument that because the Clause was rendered void due to operation of the Act, the Drivers claim that they were required to be members of the Union must fail. The plain language of the Act, however, is not limited to the use of union security provisions like the Clause but, instead, covers *all* employer-union acts that compel union membership, *i.e.*, "any act or practice that violates [the Act.]" Ind. Code § 22-6-6-12(a)(1). Because it can be based on any agreement between the Union and Employer, the fact that the Act has voided the Clause is not fatal to the Drivers' claim.

## II. Whether This Court has Jurisdiction Over the Drivers' Claims Pursuant to Indiana Code Subsection 22-6-6-8(2)

[17] The Drivers also claim that the Union and Employer have violated Indiana Code subsection 22-6-6-8(2) by compelling them to pay dues to the Union over their objections. The trial court concluded that it lacked subject matter jurisdiction over this claim on the basis that federal law has preempted Indiana law on such questions, depriving it of subject matter jurisdiction.

> In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint

and motion but also any affidavits or evidence submitted in support. In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts.

….

If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. Thus, we review *de novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where the facts before the trial court are undisputed.

*GKN Co. v. Magness*, 744 N.E.2d 397, 400-01 (Ind. 2001) (citations and quotation marks omitted).

[18] The Drivers contend that the trial court erred in concluding that federal labor-law preempts state law in the area of dues checkoff authorizations. It is well-settled, however, that "congressional regulation of checkoff is 'sufficiently pervasive and encompassing to pre-empt' the force of the state statute which 'is inconsistent with the federal law and hence can properly have no application in this suit.'" *See, e.g.*, *SeaPak v. Indus., Tech. & Prof'l Emps., Div. of Nat'l Mar. Union, AFL-CIO*, 300 F. Supp. 1197, 1199 (S.D. Ga. 1969) (quoting *Int'l Bhd. of Operative Potters, AFL and CIO et al. v. Tell City Chair Co.*, 295 F. Supp. 961, 965 (S.D. Ind. 1968)), *aff'd*, 423 F.2d 1229 (5th Cir. 1970), *aff'd*, 400 U.S. 985 (1971). Although the Supreme Court affirmed the district court's opinion in *SeaPak* without opinion, it has held that "the precedential effect of a summary affirmance can extend no farther than 'the precise issues presented and necessarily decided by those actions.'" *Ill. State Bd. of Elections v. Socialist*

*Workers Party*, 440 U.S. 173, 182 (1979).  Because the precise issue of whether states have any room to act in the area of dues authorization checkoffs was presented and necessarily decided in *SeaPak*, the Supreme Court's summary affirmance lent it binding precedential effect.

[19]  In summary, United States Supreme Court precedent holds that congressional regulation of dues checkoffs is so pervasive as to totally displace a state's ability to act in the field.  The Drivers contend that federal law is clear that when an employee who has executed a dues checkoff authorization leaves an employer, the authorization is void and without effect if the employee later returns.  Even if this is true, our hands are tied; the validity of a dues checkoff authorization is a matter of federal law pursuant to the binding precedent of *Seapak*.[4]

# Conclusion

[20]  We conclude that the Drivers' claim that the Union and Employer have required them to remain members of the Union in violation of the Act is a claim upon which relief can be granted.  Consequently, we reverse the trial court's grant of the Union's motion to dismiss this claim.  However, we conclude that the Drivers' claim based on the Dues Checkoffs is a claim over

---

[4]  It is worth noting that all of the authority cited by the Drivers on this point is either an NLRB decision or an opinion issued by a federal Circuit Court of Appeals.  Appellant's Br. p. 24.

which Indiana courts have no jurisdiction. We affirm the trial court's dismissal of that claim and its associated claim of money had and received.

[21] We affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.

Najam, J., and May, J., concur.